UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NICHOLE T.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

23-CV-0180-LJV
DECISION & ORDER

---

On February 27, 2023, the plaintiff, Nichole T. ("Nichole"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  Id.  On May 30, 2023, Nichole moved for judgment on the pleadings, Docket Item 4; on August 14, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on August 28, 2023, Nichole replied, Docket Item 9.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Nichole applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements.  See 42 U.S.C. § 423(c); Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  See 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Nichole's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.   THE ALJ'S DECISION

On April 21, 2022, the ALJ found that Nichole had not been under a disability "at any time from October 25, 2017, the alleged onset date, through December 31, 2021, the date last insured." *See* Docket Item 3 at 38. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.*

At step one, the ALJ found that Nichole had not engaged in substantial gainful activity from her alleged onset date through her date last insured. *Id.* at 25. At step two, the ALJ found that Nichole suffered from several severe, medically determinable impairments: "degenerative disc disease of the thoracic and lumbar spines" and "mental impairments various [sic] characterized as anxiety, panic disorder, and posttraumatic stress disorder (PTSD)." *Id.*

At step three, the ALJ found that Nichole's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 26-29. More specifically, the ALJ found that Nichole's physical impairments did not meet or medically equal listing 1.15

(disorders of the spine) or 1.16 (lumbar spinal stenosis).  *Id.* at 26-27.  In assessing Nichole's mental impairments, the ALJ found that Nichole was (1) moderately impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing herself.  *Id.* at 27-28.  The ALJ also found that Nichole's mental impairments did not meet or equal listings 12.04, 12.06, or 12.15.  *Id.* at 27.

The ALJ then found that Nichole had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 CFR 404.1567(b)" except that:

> [Nichole can lift] and carry[] [up to]10 pounds. She can occasionally balance[,] . . . climb ramps and stairs[,] . . . [and] stoop. She cannot climb ladders, ropes, or scaffolds. She cannot work around hazards such as unprotected heights or dangerous moving mechanical parts. She can understand, remember, and carry out simple and routine instructions and tasks. She can maintain attention and concentration and regular attendance at work for simple, unskilled routine work. This is work with no supervisory duties, no independent decision-making required, no strict production quotas as with assembly line work, and minimal changes in work routine and processes. She can have occasional interaction with supervisors, co-workers, and the general public. She cannot perform team or tandem work.

*Id.* at 29.

At step four, the ALJ found that Nichole no longer could perform any past relevant work.  *Id.* at 36.  But given Nichole's age, education, and RFC, the ALJ found at step five that Nichole could perform substantial gainful activity as a photocopying

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

machine operator, office helper, or cleaner and polisher.  *Id.* at 37-38; *see Dictionary of Occupational Titles* ("DOT") 207.685-014, 1991 WL 671745 (Jan. 1, 2016); *id.* at 239.567-010, 1991 WL 672232 (Jan. 1, 2016); *id.* at 709.687-010, 1991 WL 679134 (Jan. 1, 2016).  Therefore, the ALJ found that Nichole had not been under a disability or entitled to SSI or DIB between October 27, 2017, her alleged onset date, and December 31, 2021, her date last insured.  *See* Docket Item 3 at 38.

## II.    ALLEGATIONS

Nichole argues that the ALJ erred in two ways.  Docket Item 4-1 at 1.  First, she argues that the ALJ was obligated to further develop the record because "she [sic] indicated at the hearing that she [sic] would request records from Daniel Lawson, LMHC[,] and UB Neurosurgery[,] but failed to do so."  *Id.* at 14.  Second, she argues that the ALJ's RFC determination conflicts with the opinions of Christine Ransom, Ph.D., and Becky Sheehan, PA-C, both of which the ALJ found persuasive.  *Id.* at 18-21.  For the reasons that follow, this Court disagrees.

## III.   ANALYSIS

### A.  DUTY TO DEVELOP THE RECORD

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative duty to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  And that duty is heightened when a claimant proceeds *pro se. See Moran v. Astrue,* 569 F.3d 108, 113 (2d Cir. 2009) (duty to develop the record is heightened when a claimant waives his right to counsel and proceeds *pro se*).  But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no

5

obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1983) (internal quotation marks omitted); *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (ALJ "is not required to develop the record any further when the evidence already presented is adequate for [ALJ] to make a determination as to disability." (internal quotation marks and citation omitted)).

At the administrative hearing, the ALJ discussed the administrative record with Nichole, who was proceeding *pro se,* Docket Item 3 at 47, and Nichole gave the ALJ permission to obtain records from Mr. Lawson and UB Neurosurgery, *id.* at 53.  Nichole says that the ALJ never requested Mr. Lawson's records and "failed to send the request for records from UB Neurosurgery to the proper office, despite being notified that she [sic] had requested the information from an incorrect source."  Docket Item 4-1 at 16. For that reason, Nichole argues, there was a gap in the records that the ALJ failed to fill. *Id*.

But contrary to Nichole's assertion, there was no gap in the records.  For example, the ALJ indeed had records from UB Neurosurgery, and he considered them in determining Nichole's RFC.  *See* Docket Item 3 at 28, 32, 34-36; *see also id.* at 479-498.  Likewise, the record contained Mr. Lawson's mental health report regarding Nichole's mental problems, Docket Item 3 at 433-438, and the ALJ addressed that mental health report in his decision, *id*. at 36.  Because all that evidence adequately supported the ALJ's RFC determination, the ALJ did not need to develop the record any further.  *See Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (no error for failure to develop the record when it is not sparse and consists of medical opinions, treatment

notes, tests, and plaintiff's own testimony); *see generally Estrella v. Berryhill,* 925 F.3d 90, 95 (2d Cir. 2019) (substantial evidence is "evidence that a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks omitted).

Moreover, even though the ALJ had a heightened duty to obtain records because Nichole was proceeding *pro se* at the time of the hearing, Nichole has been represented by counsel since May 2022, about a year before she filed this case. *See* Docket Item 3 at 16-19. In that year, counsel had more than enough time to obtain any missing records and to submit them so this Court could determine whether they might impact the ALJ's decision. Because counsel has not done so, Nichole's "speculation that th[ose] additional records exist or could be obtained is not a sufficient basis upon which to warrant remand." *See Kaitlynn K. v. Comm'r of Soc. Sec.,* 2023 WL 2165179, at *5 (W.D.N.Y. Feb. 22, 2023) (also collecting cases); *Morris v. Berryhill,* 721 F. App'x 25, 27 (2d Cir. 2018) (summary order) ("The appellant urges that three missing records may exist that bear on Dr. Gomez's 'moderately limited' opinion. But that theoretical possibility does not establish that the ALJ failed to develop a complete record."); *see also Johnson v. Colvin*, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014) ("Since Plaintiff is represented by counsel, the Court presumes that if evidence in support of the memorandum's conclusory arguments were to be found, counsel would have cited to it.").

In sum, the complete record, including the opinion evidence, was sufficient to support the ALJ's findings. *Cf. DeChirico v. Callahan,* 134 F.3d 1177, 1182-83 (2d Cir. 1998) (where "substantial evidence in the record" supported claimant's account, "[b]ut there was also substantial evidence in the record from which the ALJ could have

reasonably" rules against the claimant, "we cannot say that the ALJ's finding . . . was unsupported on the record."). And Nichole's failure to provide any supposedly missing records to this Court undermines her argument that missing records may have changed the result in her favor. For both those reasons, this Court rejects her argument that the ALJ failed to develop the record.

### B. DR. RANSOM'S OPINION

Nichole also argues that the ALJ's RFC "limitations do not adequately account for Dr. Ransom's opinion that [Nichole] had moderate limitations in sustaining an ordinary routine and regular attendance at work, regulat[ing] her emotions, control[ling] her behavior and maintain[ing] her wellbeing, and be[ing] aware of normal hazards and tak[ing] precautions." Docket Item 4-1 at 20. More specifically, she argues that the ALJ's statement that "the evidence does not support greater limitations" does not adequately "explain why conflicting portions of an opinion were not incorporated into the RFC finding." *Id.* at 21. Again, this Court disagrees.

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order). As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not

8

necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

On August 11, 2018, Dr. Ransom examined Nichole and opined, among other things, that Nichole had moderate limitations in understanding, remembering, and applying directions and instructions; using judgment and reasoning to make decisions; sustaining an ordinary routine and regular attendance at work; interacting with supervisors, coworkers, and the public; sustaining concentration to perform tasks at a consistent pace; controlling behavior, maintaining well-being, being aware of normal hazards, and taking adequate precautions.  Docket Item 3 at 419-20.  The ALJ found Dr. Ransom's opinion "persuasive because it is far more detailed than the earlier opinions and more consistent with the record and supported by Dr. Ransom's own positive mental status findings."  *Id.* at 12 (citing *id.* at 294, 381-82, 418, 468). Consistent with Dr. Ransom's opinion, the ALJ limited Nichole to "simple routine instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas, minimal changes to work routine and processes, occasional interaction with others, and no team or tandem work."  *Id.* at 34.  The ALJ then explicitly noted that "the evidence does not support greater limitations."  *Id.*

"There is significant case law indicating that the ALJ's limitation of [p]laintiff to simple, routine tasks and working primarily alone, with only occasional supervision[,] accounts for her limitations in performing activities within a schedule and maintaining regular attendance."  *Shannon v. Berryhill,* 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018) (internal quotation marks and citations omitted).  Thus, the RFC here does not

conflict with Dr. Ransom's moderate limitations in maintaining a routine and attendance at work.  *See also Landers v. Colvin,* 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) (limitation to "'simple, repetitive, and routine tasks' account[ed] for [p]laintiff's limitations [in] maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance").  Those same limitations, as well as the limitations to only occasional interaction with others and no team or tandem work, adequately addressed Dr. Ransom's finding that Nichole was moderately limited in controlling behavior and interacting with supervisors, coworkers, and the public.

The ALJ also limited Nichole to performing "simple, unskilled routine work" that involves only "simple and routine instructions and tasks" with only "minimal changes in work routine and processes."  Docket Item 3 at 29.  Likewise, the ALJ specified that Nichole could have "no supervisory duties, no independent decision-making . . ., [and] no strict production quotas."  *Id*.  All that was consistent with Dr. Ransom's finding of moderate limitations in understanding, remembering, and applying directions and instructions; using judgment and reasoning to make decisions; and sustaining concentration to perform tasks at a consistent pace.  *See Zabala v. Astrue,* 595 F.3d 402, 407 (2d Cir. 2010) (affirming ALJ's decision that claimant could perform prior unskilled work where "[n]one of the clinicians who examined [the claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014) (finding that moderate limitations in the four areas of mental work-related functioning are not inconsistent with a limitation to simple, unskilled work); *Mangual v. Comm'r of Soc. Sec.,* 600 F. Supp. 3d 313, 329 (S.D.N.Y. 2022) ("As a general matter,

10

moderate limitations are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled, routine work.").

Finally, the ALJ found that Nichole could not work around any hazards, including heights or dangerous machinery.  Docket Item 3 at 29.  And that accounted for Dr. Ransom's opinion that Nichole was moderately limited in maintaining well-being, being aware of normal hazards, and taking adequate precautions.  *Id.* at 419-420.

In sum, the ALJ addressed Dr. Ransom's opinion, and he incorporated the specific limitations in that opinion in the RFC.  Nichole's argument to the contrary therefore misses the mark.

### C.  PA-C SHEEHAN'S OPINION

Nichole also argues that remand is required because "the ALJ failed to explain how Ms. Sheehan's opinion that [Nichole] was unable to perform repetitive bending and twisting was incorporated into the RFC finding."  Docket Item 4 at 22.  For two reasons, this Court disagrees.  First, the jobs that the ALJ found Nichole could perform apparently do not require repetitive bending and twisting.[5]  Second, and as noted above, the RFC need not "perfectly correspond with any of the opinions of medical

---

[5] The DOT indicates that stooping, kneeling, balancing, and crouching are not required for the jobs of photocopying machine operator and polisher.  1991 WL 671745 (Jan. 1, 2016); *id.* at 239.567-010, 1991 WL 679134 (Jan. 1, 2016).  The job of an office helper requires stooping occasionally (up to 1/3 of the time), but kneeling and crouching are not required.  1991 WL 672232 (Jan. 1, 2016); *id.* at 709.687-010.  Although the DOT accounts for postural limitations associated with bending, for example stooping and crouching, the DOT does not specify the twisting requirements of occupational positions.  Nevertheless, if only occasional or no stooping and crouching are required in a job, it stands to reason that the physical requirements—such as twisting—would be minimal.  And even if that were not true, the ALJ's finding was supported by other record evidence and opinions as noted below.

sources," *Matta,* 508 F. App'x at 56, and other opinion evidence in the record was sufficient to support the RFC.

In fact, the opinion of a medical consultant, Gary Ehlert, M.D., that Nichole is limited to only "occasional balancing and stooping," Docket Item 3 at 102, directly mirrors the ALJ's RFC determination.  What is more, "[l]imitations in bending, do not, as a matter of law, significantly diminish the range of light work available to a claimant— meaning that a failure to account for them in the RFC generally will be considered harmless."  *Garrett W. v. Comm'r of Soc. Sec.,* 2021 WL 821833, at *5 (W.D.N.Y. Mar. 4, 2021) (internal quotations and citations omitted).

Finally, Nichole argues that the ALJ failed to incorporate Ms. Sheehan's opinion that Nichole had moderate limitations in walking and standing into the RFC for light work.  Docket Item 4 at 22.  But courts in this Circuit repeatedly have held that moderate limitations in walking, standing, or lifting are consistent with an RFC for light work.  *See Rayshawn M v. Comm'r of Soc. Sec.,* 2022 WL 4298263, at *4 (W.D.N.Y. Sept. 19, 2022) (collecting cases); *Garcia v. Comm'r of Soc. Sec.,* 2022 WL 4234555, at *15 (S.D.N.Y. Sept. 14, 2022) (noting that "moderate limitations in, *inter alia,* standing, walking[,] and bending do not preclude performance of light work"); *Gurney v. Colvin,* 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) ("[M]oderate limitations . . . are frequently found to be consistent with an RFC for a full range of light work.").  So contrary to Nichole's argument, because the RFC limited her to doing light work, the ALJ was not obligated to include additional limitations in walking and standing.

In sum, the RFC is consistent with Ms. Sheehan's opinion, and even if it were not, that would not require remand.  The evidence in the record both supports the

physical RFC and permits this Court to glean the rationale behind it.  *White v. Berryhill,* 753 F. App'x 80, 82 (2d Cir. 2019) (summary order) (upholding an RFC limiting the plaintiff to light work based on opinion that claimant had "moderate limitations" in standing, sitting, and performing other activities); *Carl D. v. Comm'r of Soc. Sec.,* 2019 WL 1115704, at *11 (N.D.N.Y. Mar. 11, 2019) (moderate limitations in lifting, bending, and reaching does not necessarily preclude the performance of light work) (internal quotations and citations omitted).  Nichole's arguments boil down to a disagreement with the ALJ's weighing of the evidence, but is it "not the function of this Court to re-weigh evidence or consider *de novo* whether [Nichole] is disabled."  *Teena H. o/b/o N.I.K.,* 541 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue,* 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.").  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole" and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second-guess it.  *Matta,* 508 F. App'x at 56.

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Nichole's motion for judgment on the pleadings, Docket Item 4, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 8, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:    July 11, 2024
          Buffalo, New York

                                            *Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE